UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | |
|---|---|
| HOWARD S. NEFT, on behalf of himself and all others similarly situated,<br><br>   Plaintiffs,<br><br>v.<br><br>UNITED CONTINENTAL HOLDINGS, INC., and UNITED AIRLINES, INC. and DOES 1 through 20, inclusive,<br><br>   Defendants. | CASE NO.:<br><br><br>CLASS ACTION COMPLAINT FOR BREACH OF CONTRACT |

  Plaintiff Howard S. Neft ("Plaintiff"), by and through his attorneys, on behalf of himself and all others similarly situated, allege as follows:

## NATURE OF THE ACTION

  1. This is a class action brought by Howard Neft on behalf of himself and all consumers who purchased a Silver Wings Plus program ("Silver Wings" or "Program") lifetime membership (the "Class") against defendant United Continental Holdings, Inc. and its wholly owned subsidiary United Airlines, Inc. (collectively, "Defendants" or "United") for breach of contract arising out of United's failure to provide the bargained-for benefits to the Silver Wings lifetime members, in violation of the express terms of the contract and the implied covenant of good faith and fair dealing.

  2. In 1986, United launched Silver Wings – a discount program that specifically targeted the senior travel market. United incentivized seniors to join Silver Wings by offering a myriad of benefits, consisting primarily of access to low, fixed zone fares. Targeted seniors accepted by paying the required one-time membership fee, which fee varied depending on the membership level. Lifetime members paid $225 to join.

  3. As part of its efforts to minimize costs, United discontinued the Program twenty-one years later. In or about 2007, United provided refunds to Silver Wings annual

1

members for the unused portions of their memberships. Perhaps recognizing that it would spend hundreds of millions of dollars if it also provided a refund to lifetime members, since the "vast majority" of the members were lifetime members as of 2001, United chose not to provide any type of refund to lifetime members. Instead, United claimed that lifetime members would still have access to United's low, fixed zone fares, which was the primary benefit of the Program.

4. For at least the past two years, however, Plaintiff has been unable to book a zone fares flight with United, either by phone or online. United's agents have no knowledge of the Program and/or zone fares, United's website does not retrieve any searches for zone fares flights, and directs Plaintiff to call United's agents. The remaining Silver Wings lifetime members have experienced, and continue to experience, the same or similar difficulties in booking a zone fares flight with United.

5. Accordingly, United has, for all intents and purposes, abandoned and terminated the Program. In violation of its contractual obligations, United is failing to provide the bargained-for benefits it offered to lifetime members when they enrolled in the Program.

6. Plaintiff, on behalf of himself and other Silver Wings lifetime members, brings this class action seeking to recover the one-time $225 fee they each paid to join the Program.

**PARTIES**

7. Plaintiff and putative class representative Howard S. Neft ("Mr. Neft") is over 18 years of age and resides in Scottsdale, Arizona. Based on his recollection, Mr. Neft became a Silver Wings lifetime member in or about 1999 or 2000.

8. Defendant United Continental Holdings, Inc. ("United Continental") is a publicly held company incorporated under Delaware law with its headquarters and principal place of business in Chicago, Illinois. It was formed in October 2010 via a merger between Continental Airlines and United Airlines. United Continental is the successor in interest to defendant United Airlines, Inc.

2

9. Defendant United Airlines, Inc. ("United Airlines") is a major airline headquartered in Chicago, Illinois. United Airlines is the entity that created and sold Silver Wings lifetime memberships to Plaintiff and the putative Class members. In October 2010, defendant United Airlines became a wholly owned subsidiary of defendant United Continental. These defendants and their subsidiaries and agents are collectively referred to in this Complaint as "Defendants" or "United".

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; the suit involves citizens of different states, as Plaintiff is a citizen of Arizona and Defendants are citizens of Illinois; and over two-thirds of the proposed class members *aggregate* are citizens of states other than Illinois, the state which Defendants are citizens of and where this District is located. With regard to the amount in controversy, *and alleges that* as of 2001, United had enrolled at least 750,000 members in Silver Wings. According to Dick Veatch, the Managing Director of Silver Wings in 2001, the "vast majority" of these 750,000 Program members were lifetime members.[1] This admission means that at a minimum, fifty percent (50%) of the Silver Wings members were lifetime members who paid the required $225 membership fee. Multiplying the $225 membership fee by 50% of the 750,000 Program members equals eighty-four million, three hundred seventy-five thousand dollars ($84,375,000). This amount far exceeds the $5,000,000 amount in controversy requirement.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants' headquarters and principal places of business are located in this District.

## FACTUAL ALLEGATIONS

### Silver Wings Program Background

12. United created Silver Wings in 1986. There were two requirements to join the

---

[1] http://articles.chicagotribune.com/2001-07-25/news/0107240342_1_discounts-silver-wings-plus-members-senior-travelers

3

Program: (1) be at least 55 years of age and (2) pay a membership fee. The fee amount depended on the length of the membership. In 1999 or 2000, around the time Mr. Neft joined the Program, seniors had the option to purchase a two-year membership for $75, or a lifetime membership for $225. As of 2001, the "vast majority" of those who enrolled in the Program, including Plaintiff, picked the latter.[2]

13. In exchange for paying the one-time membership fee, United agreed to provide a myriad of benefits to its Silver Wings members, including travel discount, double miles for booking reservations with its travel partners and discounts on partnered hotels, resorts, rental cars and cruise lines. The primary benefit of the Program, was airfare discounts offered through United's exclusive zone fares – flat flares which allowed Silver Wings members and a travelling companion of any age to travel domestically and internationally at fixed low airfares. These flat fares were divided into destination zones (geographic).

14. As reported in the Chicago Tribune in 2001, the "biggest draw" of the Program was the "substantial discounts" on United's flights.[3] In 2001, for example, a member and a travel companion could travel from Chicago to anywhere else within the same zone for only $124 round-trip.

15. In 2003, Silver Wings still received good reviews for the travel discounts it provided to seniors. The popular travel guide website frommers.com, for example, praised the "spectacular savings" that United offered to seniors through the Program.[4] The website described the low discount fares available to Silver Wings members, including a $149 roundtrip flight within the same zone in the U.S., and concluded that Silver Wings "is one of the best discounts still around for the over-55 set."

16. Silver Wings members could quickly calculate the airfare for flights by using a zone grid that listed the flat fare for each zone. The zone grid was posted and readily available to the Program members on United's Silver Wings website. This was the primary

---

[2] *See id.*

[3] *See id.*

[4] http://www.frommers.com/articles/1419.html

benefit of the program, as it allowed the members to easily access and compare the Silver Wings zone fares against fares offered by other airlines, or fares offered by United to non-Silver Wings travelers.

17. These Silver Wings discounts and benefits enticed hundreds of thousands of seniors to join the Program. By 2001, Silver Wings had enrolled 750,000 members. The then-Managing Director of Silver Wings Dick Veacht told the Chicago Tribune that the "vast majority" of these 750,000 members were lifetime members.

**Plaintiff Howard Neft Joined the Silver Wings Program as a Lifetime Member**

18. Mr. Neft was one of the seniors who joined the Program as a lifetime member. Based on Mr. Neft's recollection, he became a Silver Wings lifetime member in 1999 or 2000, not long after he met the 55-age requirement. Based on his recollection, Mr. Neft became aware of the Program when he received promotional mailings from United describing United's offer and the promised benefits of becoming a Silver Wings member. More than 15 years have transpired since Mr. Neft received United's offer and he no longer has copies of these documents or access to them. On information and belief, Defendants have in their possession, or have access to, the specific offer and benefits it promised to Mr. Neft in 1999 or 2000 when he joined the Program.

19. Mr. Neft alleges, on information and belief, that in 2000, United incentivized seniors to join Silver Wings by offering substantial travel discounts, including access to the following zone fares:

- <u>Domestic Zone Fares</u>. Enjoy low, distanced airlines on flights across all 50 United States, and to Puerto Rico, the U.S. Virgin Islands and Canada. Fly on United Airlines for as low as $118 roundtrip.

- <u>International Zone Fares</u>. United is offering, exclusively to Silver Wings Plus members, international zone fares from the United States to Europe, Asia, Australia, New Zealand, and Latin America that open up a world of adventure at incredible

5

>prices. … Travel from New York, Zone A on the Europe schedule, to Amsterdam for a mere $475 roundtrip.

20. Based on Mr. Neft's recollection, these offers are substantially similar to the promised offers and benefits that motivated him to join the Program.

21. Induced by the promised travel discounts, Mr. Neft accepted United's offer to join the Program. Based on his recollection, Mr. Neft mailed a completed a membership acceptance form, in which he provided his credit card information to pay for the membership fee. United charged $225 to Mr. Neft's credit card for his Silver Wings lifetime membership. Mr. Neft completed and mailed the acceptance form to United more than 15 years ago, and consequently, he no longer has a copy of this form or access to it. Mr. Neft only has a copy of his membership card, which states that his Silver Wings membership is "Valid Thru Life". On information and belief, Defendants have, or have access to, Mr. Neft's acceptance form.

22. Taking advantage of the fixed low zone fares that United offered to Silver Wings members, which also applied to a travel companion, Mr. Neft and his wife traveled to several places, domestically and internationally, after he joined the Program.

## United Terminated the Silver Wings Plus Program

23. United terminated Silver Wings in early 2007, and announced the cancellation of the Program in April 2007, stating:

>For years, Silver Wings Plus has brought members numerous opportunities to earn extra miles and save on travel.
>
>As part of United Airlines' efforts to control costs, optimize revenue and respond to customer feedback, we have decided to discontinue the Silver Wings Plus program. Starting July 1, 2007, Silver Wings Plus will no longer offer annual memberships. And, effective immediately, Silver Wings Plus will no longer activate, renew or extend annual memberships.

24. United's current website confirms the termination of the Program: "Please Note: Silver Wings Plus no longer activates, renews or extends annual memberships."[5]

---

[5] http://www.united.com/CMS/en-US/products/travelproducts/Pages/Silverwings.aspx

25. United notified the Silver Wings *annual* members of the termination of the Program and provided a refund for the unused portions of their memberships. Annual members could choose from a cash refund or opt for bonus miles or electronic travel certificates. If the annual member did not choose an option by May 31, 2007, a cash refund was automatically processed and the amount was credited back to the credit card most recently provided by the member to activate or renew the membership.

26. Unlike the annual members, Silver Wings *lifetime* members, such as Plaintiff, did not receive notice of the termination of the Program or any type of refund.

27. According to United Silver Wings' current website:

> If you joined Silver Wings as a lifetime member before September 2005, you still have access to special Zone Fares.
>
> …
>
> As a Silver Wings Plus lifetime member, you have access to our exclusive Zone Fares, which allow you and a travelling companion of any age to travel roundtrip, internationally or within the U.S., at fixed low fares.[6]

28. Per this web page, Silver Wings lifetime members purportedly still have access to United's fixed low zone fares – the primary benefit of the Program.

29. The web page directs Silver Wings lifetime members to book a trip with United's zone fares by calling the Silver Wings Plus Travel Center (the "Travel Center"), or online by logging in their MileagePlus account at united.com and typing "silverwing" in the Offer Code box. The web page states that when booking flights online, flights that are eligible for zone fares will be indicated with a blue star.

30. Contrary to the statement on the web page, however, lifetime members cannot book trips with United's zone fares, and have not been able to do so since at least 2013. In multiple occasions within the last two years, Plaintiff has attempted to book a zone fares flight with United, to no avail.

---

[6] *See id.*

31. Plaintiff called the Travel Center several times in or about 2013 attempting to book a zone fares flight. He explained to the Travel Center agents that he is a Silver Wings lifetime member and wanted to book a flight using the Program's zone fares. The first couple of travel agents he spoke with had no knowledge of the Program and did not know what he meant by "zone fares". The last time he called, also in 2013, Mr. Neft finally spoke with an agent who knew about the Program; she notified him that the Program had been discontinued and that United's zone fares were no longer available. Disappointed by this news, Mr. Neft elected not to book the flight with United and made the reservation with another airline, for a price he believes was higher than it would have been had he been able to use United's fixed zone fares.

32. Mr. Neft later learned that, according to United's website, Silver Wings lifetime members apparently have access to zones fares if they make the reservation online at www.united.com. However, when Mr. Neft attempted to book a flight online by logging in his information and entering "silverwing" in the Offer Code box, as directed on United's website, the search failed to retrieve any eligible zone fares flights (i.e., no "blue star" appears next to the retrieved flights, as it should if it were a zone fares flight). He attempted to book a zone fares flight numerous times by changing the destination and/or dates to see if a "blue star" appeared; none did.

33. Based on United's no longer offering the promised zoned fares, it has *de facto* the Silver Wings Program, cancelled and failed to provide the bargained-for benefits – to the Silver Wings lifetime members. Accordingly, United has breached its contractual obligations to Plaintiff and the Class members.

34. As a result, Mr. Neft, on behalf of himself and the other Silver Wings lifetime members, seeks to recover the $225 fee they each paid to join the Program.

## CLASS ALLEGATIONS

35. Plaintiff brings this case as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of himself and the proposed Class consisting of:

> All consumers who purchased a lifetime membership in United Airlines, Inc. Silver Wings Plus Program.

8

36. Excluded from the Class are Defendants, their subsidiaries, employees, officers, directors, heirs, assigns and any other person, firm trust or corporation or other entity related to or affiliated with United. Plaintiff reserves the right to amend the definition of the Class if discovery and/or further investigation reveal that the Class should be expanded or otherwise modified.

37. **Numerosity/Impracticability of Joinder.** The members of the Class are so numerous that joinder of all members would be impracticable. The members of the Class are readily identifiable from information and records in Defendants' possession, custody or control. Plaintiff believes and alleges that as of 2001, United had at least 750,000 Silver Wings members. The then-Managing Director of Silver Wings Dick Veatch confirmed to the Chicago Tribune that the "vast majority" of these 750,000 program members were lifetime members.[7] Thus, at a minimum, Silver Wings had at least 375,000 (50% of 750,000) lifetime members in 2001.

38. **Commonality.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. These common legal and factual questions, which do not vary from one Class member to another, include, but are not limited, to the following:

   a. Whether, and when, United stopped making zoned air fares available to its Silver Wings members;

   b. Whether, and when, United discontinued the Silver Wings Program;

   c. Whether, by their conduct described herein, Defendants breached their contractual obligations to the Class;

   d. Whether, by their conduct described herein, Defendants breached their duty of good faith and fair dealing;

   e. Whether Plaintiff and the members of the Class have sustained damages and, if so, the proper measure of such damages; and

   f. Whether Plaintiff and the members of the Class are entitled to recover the initial $225 membership fee they paid to join Silver Wings.

---

[7] http://articles.chicagotribune.com/2001-07-25/news/0107240342_1_discounts-silver-wings

39. **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class, as Plaintiff and all other members of the Class were injured by the same wrongful conduct by Defendants, and are based on the same relevant facts and legal theories.

40. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the members of the Class, and has retained competent class counsel who is experienced and qualified in complex class action litigation. Neither Plaintiff nor his counsel has interests that are contrary to, or in conflict with, those of the other members of the Class.

41. **Predominating Questions / Superiority.** The questions of fact and law identified in Paragraph 38, *supra*, predominate and will likely be dispositive of the claims and defenses in this action. In any event, the outcome of this litigation will rest on questions of fact and law that are common among Plaintiff and the class members.

42. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein for the following reasons:

   a. The Class is readily definable and identifiable;

   b. The amount at stake for the Class members is relatively small, and makes it impractical for them to maintain individual suits against Defendants;

   c. It will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail;

   d. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants;

   e. To the best of the Plaintiff's knowledge no other litigation concerning this issue is presently pending. There was a prior action filed in the Northern District of Illinois, which was dismissed for lack of jurisdiction. It was refiled in the Circuit Court of Cook County and dismissed for pleading

deficiencies. Although filed as a putative class action, a class was never certified (nor was there ever a decision on a motion for class certification). The prior decisions are not binding on Plaintiff or any members of the class, nor do they provide any grounds for collatoral estoppel applicable to this case.

43. **Manageability.** Plaintiff does not anticipate any difficulty in the management of this action as a class action because evidence of liability and the amount of damages is the same for Plaintiff and each Class member. The class members can easily be identified and contacted based on Defendant's records.

## COUNT I

### (Breach of Contract)

44. Plaintiff repeats and incorporates the allegations in the preceding paragraphs of this Complaint, as if fully set forth herein.

45. Plaintiff and the Class members entered into a contractual relationship with Defendants when they became Silver Wings lifetime members.

46. The key terms of the contract, including United's offer describing the Silver Wings promised benefits and the steps Plaintiff and the Class members had to follow to accept, were contained in materials that Defendants provided to Plaintiff and the Class members and constitute a written agreement between the parties. Plaintiff no longer has copies of these materials or access to them. However, on information and belief, the documents are in the exclusive custody and control of Defendants.

47. United incentivized Plaintiff and the Class members to join the Silver Wings program by offering to provide access to United's exclusive zone fares, which allowed Silver Wings members and a travelling companion of any age to travel domestically and internationally at fixed low airfares. Indeed, United's current website states that notwithstanding termination of the Program, Silver Wings lifetime members still have access to special zone fares.

48. Plaintiff and the Class members accepted Defendants' lifetime membership offer by submitting an application and paying the required one-time $225 fee.

49. Plaintiff and the Class members performed all of their obligations under their contractual relationship with Defendants.

50. Defendants breached, and continues to breach the contract with Plaintiff and the Class members by failing to provide the zoned air fares, despite the representations on United's website indicating the zoned fares are still available. Plaintiff and the Class members are unable to book zone fares flights by calling the Travel Center or online at www.united.com, as directed on United's website.

51. Defendants have further breached the contract with Plaintiff and the Class members by failing to honor their obligation of good faith and fair dealing, which, under Illinois law, is an implicit term in every contractual relationship, absent express disavowed. Upon information and belief, Defendants did not expressly contract out of the covenant when they entered into the contractual relationship with Plaintiff and the Class members.

52. Under the implied covenant of good faith and fair dealing, Defendants were, and still are, required to deal with Plaintiff and the Class members in good faith and to engage in fair dealing. Defendants have failed to do so by failing to provide the bargained-for benefits, representing in bad faith that Silver Wings lifetime members have access to zone fares—the primary benefit of the Program—when in fact this is not the case, and after ceasing to offer the zoned fares, failing to refund the membership fees they accepted from Plaintiff and the Class members.

53. Plaintiff and the Class members suffered damages, and continue to suffer damages, as a direct and proximate result of Defendants' failure and refusal to provide the bargained-for benefits, in violation of the express terms of the contract and breach of the implied covenant of good faith and fair dealing.

54. Plaintiff and the Class members are entitled to damages, including recovery of the $225 membership fee they each paid to enroll in the Program, and attorneys' fees and costs, as permitted by law. Plaintiffs and the Class members are seeking damages only in the

amount of their lifetime membership fee. They are not seeking specific performance or any other damages in the amounts they have had to pay in excess of the zoned fares.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the putative Class members, pray for the following relief:

A.   For an order certifying this case as a class action under Federal Code of Civil Procedure 23(b)(3), as alleged herein, appointing Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel;

B.   For a declaration that United breached its obligations;

C.   For an order awarding Plaintiff and the Class members monetary and compensatory damages, including the $225 lifetime membership fee they each paid to join Silver Wings, along with any other statutory or equitable compensation to which they may be entitled, with interest thereon;

D.   For an award of reasonable attorneys' fees as provided for by the Federal Rules of Civil Procedure 23(h) and 54 and all other applicable law and/or equitable doctrines;

E.   For all costs of suit; and

F.   For such other and further relief as the Court deems just and proper.


Dated: January 19, 2015

By:

s/  Robert J. Stein III
      Robert J. Stein III

Counsel for Plaintiff and the Putative Class

Robert J. Stein III
rstein@alvaradosmith.com
ALVARADO SMITH, A.P.C.
1 MacArthur Pl., Suite 200
Santa Ana, CA 92707
(714) 852-6800

                Anthony S. DiVincenzo
                adivincenzo@dsschicagolaw.com
                DiVincenzo Schoenfield Swartzman
                33 N. LaSalle St., 29th Fl.
                Chicago, IL 60602
                (312) 334-4800

4218097.1 -- NRJS1216.1