IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HOWARD S. NEFT, on behalf of himself and all others similarly situated, | ) ) ) | |
| | ) | No. 16-cv-765 |
| Plaintiffs, | ) ) | Judge Robert M. Dow, Jr. |
| v. | ) ) | |
| UNITED CONTINENTAL HOLDINGS, INC., and UNITED AIRLINES, INC. and DOES 1 THROUGH 20, INCLUSIVE, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Howard Neft ("Plaintiff") brings this proposed class action on behalf of himself and similarly situated plaintiffs against Defendants United Continental Holdings, Inc. ("United Continental") and United Airlines, Inc. ("United") (together, "Defendants"), and unnamed Doe defendants, for Defendants' alleged breach of contract arising out of their failure to provide bargained-for benefits to their "Silver Wings" discount program lifelong members. Currently before the Court are Defendants' motion to dismiss [16] and Plaintiff's motion to convert Defendants' motion dismiss into a motion for summary judgment [23]. For the reasons explained below, both motions [16], [23] are denied. This case is set for status hearing on January 25, 2017 at 9:00 a.m. The parties should come prepared to discuss a schedule for the completion of discovery and summary judgment briefing.

**I.  Background**

The following facts are taken from Plaintiff's complaint [1], which he proposes to bring on behalf of a class of similarly situated plaintiffs. In 1986, United launched "Silver Wings," a discount program targeted at individuals aged 55 and over ("Program"). The primary benefit of

the Program was access to low, fixed zone fares. Zone fares were flat fares which allowed a Silver Wings member and a traveling companion of any age to travel domestically and internationally at fixed low airfares. Zone fares were divided into geographic destination zones. Members could quickly calculate their airfare for flights by using a zone grid that listed the flat fare for each zone. The zone grid was posted and readily available on United's Silver Wings website.

A lifetime membership in the Program cost $225, while a two-year membership cost $75. By 2001, United had enrolled 750,000 members, most of whom were lifetime members. Plaintiff, a resident of Arizona, purchased a lifetime membership in 1999 or 2000, shortly after he turned 55. Specifically, United sent Plaintiff promotional materials offering him access to domestic and international zoned fares with substantial discounts, and Plaintiff accepted United's offer and paid the $225 fee for a lifetime membership. [1] at 5-6. Plaintiff received a membership card, which states that it is "Valid Thru Life." *Id*. at 6. However, Plaintiff no longer retains copies of other forms or documents that he received regarding the Program.

United discontinued the Program in 2007. It sent termination notices and provided refunds to Silver Wings annual members for the unused portions of their memberships, but did not provide termination notices or refunds to lifetime members like Plaintiff. Instead, United claimed that lifetime members would still have access to its low, fixed zone fares. In October 2010, United became a wholly owned subsidiary of United Continental.

Since at least 2013, Plaintiff has been unable to book zone fare flights with Defendants. Defendants' agents have no knowledge of the Program or zone fares and their website does not retrieve any searches for zone fare flights. Other lifetime members in the Program also have experienced and continue to experience the same difficulties booking zone fare flights, despite

2

United's representations on its website that zoned fares are still available. In essence, Plaintiff alleges, Defendants have abandoned and terminated the Program in violation of their contractual obligations.

Plaintiff, on behalf of himself and other lifetime members of the Program, seeks to recover the one-time $225 fee that he paid to join the Program, plus attorneys' fees and costs. His complaint contains one count, for breach of contract. Plaintiff alleges that he and other members of the class entered into a contractual relationship with Defendants when they signed up to become Silver Wings lifetime members. Plaintiff alleges that while he no longer has copies of the documents from United which describe the Program and its benefits, these documents are (on information and belief) in Defendants' exclusive custody and control. According to Plaintiff, Defendants breached their obligations to lifetime members of the Program and failed to honor their obligation of good faith and fair dealing, by: (1) failing to provide zones air fares, either over the phone or online; (2) representing in bad faith that Program members have access to zone fares, when in fact that is not the case; and (3) failing to refund membership fees when they ceased offering zoned fares.

## II.     Legal Standard

Defendants move to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court "accept[s] all well-pleaded facts as true and draw[s] all reasonable inferences in plaintiff's favor." *Id.* at 600 (citing *Tamayo v. Blagojevich*, 526 F.3d

1074, 1081 (7th Cir. 2008)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

"As a general rule, on a Rule 12(b)(6) motion, the court may consider only the plaintiff's complaint." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). However, "[d]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim," and "may be considered by a district court in ruling on the motion to dismiss." *Id.*; see also *Hartford Fire Ins. Co. v. Henry Bros. Const. Mgmt. Servs., LLC*, 2011 WL 3563138, at *4 (N.D. Ill. Aug. 10, 2011). This exception is "aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir. 1998). "'The court is not bound to accept the pleader's allegations as to the effect'" of a document attached to a complaint or a motion to dismiss, but instead "'can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material.'" *Rosenblum*, 299 F.3d at 661 (quoting 5 Wright & Miller, *Federal Practice & Procedure: Civil 2d,* § 1327 at 766 (1990)).

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

## III.  Analysis

Defendants argue that the complaint should be dismissed because Plaintiff's theory of breach of contract is directly contradicted by the contract on which Plaintiff's breach of contract claim is based. See generally [16], [17]. According to Defendants, the relevant contract is United's Silver Wings Plus Membership Policies ("Policies"), which they attach as an exhibit to

4

their motion to dismiss. The Policies state, in relevant part, that the terms, policies, and conditions of the Program are subject to change at any time and that United reserves the right to terminate the Program with 12 months' notice. [17-1] at 5. The Policies also provide that "[t]he membership fee is refundable during the first 90 days of membership only, upon return of complete membership kit." *Id.* Defendants seek to authenticate the Policies through the supporting affidavit of Brad Harraman ("Harraman"), a former employee of United's Relationship Management Programs, which administered the Program from at least 1998 through 2001. Defendants assert that the Harraman affidavit constitutes a "proper authentication of the Terms and Conditions as the contract governing Silver Wings Plus." [24] at 13.

In response, Plaintiff moves to convert Defendants' motion to dismiss into a motion for summary judgment and requests that he be allowed to conduct discovery. See [23]. Plaintiff challenges Defendants' assertion that the Policies constitute the governing contract and submits his own affidavit stating that he never received a copy of or agreed to the Policies. Instead, Plaintiff argues, the governing contract consists of the documentation that United sent him to solicit his participation in the Program, which he signed and sent back to United, and which is in Defendants' exclusive custody. Plaintiff seeks discovery aimed at determining what contract governs the parties' relationship, followed by a summary judgment ruling from the Court.

The Court concludes that would not be appropriate for it either to consider the Policies as part of the pleadings or to take judicial notice of them in ruling on Defendants' motion to dismiss. Although Plaintiff's complaint does "refer[] to" a contract, and that contract is "central to [Plaintiff's] claim," *Levenstein*, 164 F.3d at 347, Defendants have not demonstrated to the Court's satisfaction that the Policies, in fact, constitute the governing contract referred to in Plaintiff's complaint.

5

In his affidavit, Harraman states that the Policies were in effect between 1998 and 2001. In his supplemental affidavit, Harraman further states that he has direct personal knowledge of "the Terms and Conditions that governed the Silver Wings Plus Program" from November 1995 and February 2002. [24-1] at 2-3. Harraman does not state in either affidavit, however, that the Policies constitute the contract (let alone the entire contract) between Defendants and Program members, or more specifically that the Policies constituted the contract between Defendants and *Plaintiff* or the putative class members. Nor does Harraman state that the Policies were or would have been sent to Plaintiff to establish Plaintiff's membership in the Program (and Plaintiff in his affidavit swears that he never received or agreed to the Policies). Moreover, Harraman does not state that the Policies were in effect when Defendants took the actions on which Plaintiff's breach of contract claim are based, in particular, ceasing to offer zone fares. The complaint challenges actions that Defendants took since 2007, whereas the Policies were, according to Harraman, in effect only until 2001. For these reasons, the Court cannot conclude based on Harraman's affidavit and its own review of the Policies that the Policies constitute the "contract governing Silver Wings Plus," [24] at 13, to which Plaintiff refers in his complaint. It would therefore be inappropriate to consider the Policies in ruling on Defendants' motion to dismiss.

Defendants' motion to dismiss is premised entirely on the contents of the Policies. Defendants rely on the Policies: 1) to refute the complaint's allegations that Defendants breached the governing contract by ceasing to offer zone fares; 2) to refute the complaint's demand for full refunds for lifetime Program members; 3) to argue that the breach of contract claim is preempted by the Airline Deregulation Act of 1978 ("ADA") because it "seeks to *ignore*, rather than *enforce*, United's contractual obligations, and because Plaintiff seeks a refund that United did not voluntarily undertake to pay," [16] at 1; and 4) to argue that the "implied covenant of good faith

and fair dealing" allegations of the breach of contract claim are preempted by the ADA because they seek to enlarge the contractual obligations that the parties voluntarily adopted," [17] at 16. Since Defendants have not demonstrated that the Policies constitute the contract referred to in Plaintiff's complaint for breach of contract, the Court cannot rule in Defendants' favor on any of these arguments. The motion to dismiss [16] is therefore denied.

The Court also denies Plaintiff's motion to convert the motion to dismiss into a motion for summary judgment [23]. The Court is excluding the Policies from its consideration of Defendants' motion to dismiss, and therefore is not required by Rule 12(d) to convert the motion to dismiss into a motion for summary judgment. See Fed. R. Civ. P. 12(d). Plaintiff will be allowed to proceed with discovery to ascertain which contract or contracts govern his breach of contract claim. To the extent that Defendants believe that the discovery sought is overly broad, and the parties are unable to cooperatively resolve their differences, Defendants may file an appropriate discovery motion seeking the Court's intervention. Any party may file for summary judgment at a later stage of the case. The Court finds this course preferable to converting the motion to dismiss into a motion for summary judgment and allowing it to languish on the docket while discovery proceeds. The motion to dismiss is not currently structured as a motion for summary judgment or supported by a statement of undisputed facts, as required by Local Rule 56.1. The Court also takes into account Defendants' opposition to conversion.

**IV.     Conclusion**

For these reasons stated above, the Court denies both Defendants' to dismiss [16] and Plaintiff's motion to convert the motion to dismiss into a motion for summary judgment [23]. This case is set for status hearing on January 25, 2017 at 9:00 a.m.  The parties should come prepared to discuss a schedule for the completion of discovery and summary judgment briefing.


Dated: January 3, 2017                                 _____
                                                      Robert M. Dow, Jr.
                                                      United States District Judge