# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HOWARD S. NEFT, on behalf of himself and all others similarly situated, ) ) ) | |
| ) | No. 16-cv-765 |
| Plaintiffs, ) | |
| ) | Judge Robert M. Dow, Jr. |
| v. ) | |
| ) | |
| UNITED CONTINENTAL HOLDINGS, INC., and UNITED AIRLINES, INC., ) ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Howard Neft ("Plaintiff") brings this proposed class action on behalf of himself and similarly situated plaintiffs against Defendants United Continental Holdings, Inc. ("UCH") and United Airlines, Inc. ("United") (together, "Defendants") for Defendants' alleged breach of contract arising out of their failure to provide bargained-for benefits to their "Silver Wings" discount program lifelong members. Currently before the Court is Defendants' motion for summary judgment [49]. For the reasons explained below, Defendants' motion [49] is granted. Judgment will be entered in favor of Defendants and against Plaintiff.

## I.   Background

The Court takes the relevant facts from the parties' Local Rule 56.1 statements and exhibits thereto, [51], [59], and [61]. The following facts are undisputed unless otherwise noted.

Plaintiff resides in Scottsdale, Arizona. He purports to bring this case on behalf of a putative class defined as follows: All consumers who purchased a lifetime membership in United Airlines, Inc.'s Silver Wings Plus Program. Defendant UHC is a Delaware corporation with its

principal place of business in Chicago, Illinois.[1]  Defendant United, a wholly-owned subsidiary of UCH, is a corporation with its principal place of business in Chicago, Illinois.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because (a) Plaintiff is a citizen of Arizona and Defendants are citizens of Illinois and Delaware, (b) the number of members of the putative class exceeds 100, and (c) the aggregate amount in controversy, per Plaintiff's allegations, exceeds $5,000,000.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants have their principal places of business in this district.

In 1986, United made an offer to customers aged 55 and older to join a travel program called Silver Wings Plus ("Silver Wings").  Silver Wings offered benefits through several of United's travel partners, including cruises, hotels, and car rentals, and also offered benefits through United, including flight discounts, bonus miles, and mileage-based and "zone"-based airfares.  Generally speaking, "zoned" fares are divided into geographic destination zones, shown in a grid that lists the flat fare for each zone, which allow travel at a fixed fare.  Silver Wings offered customers a choice of annual or lifetime memberships. Members joined Silver Wings by paying a membership fee, which varied depending on the type of membership and the date purchased.

From at least November 1995 through December 2002, Silver Wings was administered by Relationship Management Partners, Inc. ("RMP").  During that period, RMP was responsible for member acquisition, member retention, and member communications for the Silver Wings program.  RMP's member acquisition activities included the creation and mailing of marketing materials, referred to as acquisition mailings or packets, to potential Silver Wings members.

---

[1] Plaintiff does not claim that anybody from UCH made any promises to him at the time he purchased his Silver Wings membership.  Plaintiff has never had any conversations with anybody from UCH about his Silver Wings membership.

2

After individuals purchased a Silver Wings membership, they would be sent a packet of membership materials, referred to as a fulfillment package, by RMP. Throughout the period that RMP administered the Silver Wings program, the fulfillment packages included, among other things, a membership card and a brochure that set forth the program's membership policies (the "Terms and Conditions"). In addition, RMP created and sent to members periodic newsletters ("Member Reports") highlighting the travel offers available to them.

Brad Harraman ("Harraman") was the Vice President of Marketing Communications for RMP from June 1999 through February 2002 and was responsible for the Silver Wings program from November 1995 through December 2002. Harraman testified that when someone bought a lifetime membership, "[t]hey would receive . . . welcome gifts, [and a] newsletters," which contained "a lot more travel offers that they could take advantage of." [51-2] at 30. Harraman agreed that "it would be fair to say a lifetime membership essentially was the opportunity to have access to whatever benefits RMP was able to negotiate for its members," which "[v]aried all the time." *Id*. Harraman also testified that no "zoned fares" were ever promised as a lifetime benefit of Silver Wings, and more broadly that "[t]here were no lifetime benefits of Silver Wings, entitlements that lasted forever"; "[e]verything has expiration." *Id*. at 39-40. Further, Harraman testified, the only thing that people were guaranteed to get in exchange for their $225 membership fee was "[w]hat was in the welcome—what was in the acquisition package." [59-2] at 12. According to Harraman, the "lifetime benefit would be getting—getting the monthly communications and the other direct mails as long as the program—as long as the travel offers were being procured." *Id*. at 12-13.

At the end of 2002, United terminated its agreement with RMP and took back administration of the Silver Wings program. In 2005, United ceased selling lifetime

memberships in the Silver Wings program. In 2007, United discontinued offering Silver Wings to non-lifetime members, and as of July 1, 2007, it no longer offered, activated, renewed or extended annual Silver Wings memberships.

Plaintiff purchased a lifetime membership in Silver Wings on or about April 27, 2000 for a fee of $225. Plaintiff testified that he joined Silver Wings after receiving a mailing via U.S. mail, which contained "something that I had put my name on, signed it, and sent it back in." [59] at 6. Plaintiff believes he received the mailing "no more than two weeks" before he joined. *Id*. Plaintiff testified that a contract was formed between him and United based on the mailing that he received advertising Silver Wings. According to Plaintiff's deposition testimony, the contract included zoned airfares, which he believed would remain in effect (albeit at different prices) for life. There is no longer any record of the specific acquisition mailing that was sent to Plaintiff. However, Plaintiff admits that he has no basis to dispute that the mailing he received inviting him to join the Silver Wings program was substantially similar to the standard acquisition packet that RMP sent during 2000.

Harraman testified that RMP used a standard acquisition packet that changed very little over the course of a year. He further testified that an acquisition packet received by a prospective member in March or April 2000 would have been "very similar" to acquisition packets dating from February 2000 (when Plaintiff joined Silver Wings). [59] at 6. Harraman produced the acquisition packets used in March and April 2000. See [51-4], [51-5]. However, Harraman did not know specifically what Plaintiff received or have any first-hand knowledge of the transaction involving Plaintiff.

The standard acquisition mailing sent by RMP in 2000 included a letter that highlighted certain travel offers and benefits that were offered as enrollment bonuses or welcome gifts, and

also described the ongoing program benefits members could expect to receive. One of the welcome gifts described was certificates to access "USA Collection" mileage-based fares for free. [51-2] at 20.[2] The standard acquisition mailing included an insert that described the USA Collection as a "mileage-based fare structure," where the fare for a flight was determined by the number of miles being flown and the day of the week. For example, if a customer was flying fewer than 500 miles on a Tuesday, the fare would be the same regardless of the starting or ending cities; what mattered was the total number of miles traveled. The insert advised that the fares were valid "between September 1, 1999, and August 31, 2000." [59] at 10. The 2000 RMP acquisition mailings did not use the term "zone" airfares or include a map dividing the United States into "zones."

The standard acquisition packets that RMP sent out during 2000 included a brochure inviting the recipient to "sign up . . . using the enclosed Membership Application." [59] at 12. That brochure also contained, under the heading "Terms and Conditions," the following standard language: "Silver Wings Plus and its partners reserve the right to withdraw any offer without prior notice." *Id*. The offer letter that was included in the acquisition packets further informed prospective members that "[a]dditional details, including any restrictions, will be included with your membership materials" and that new members who were not "completely satisfied" could return the membership materials within 90 days of enrollment for a full refund. *Id*.

Once someone purchased a Silver Wings membership, RMP would send him or her a "fulfillment package." During the entire period when Harraman was supervising the Silver Wings program—November 1995 through the end of 2002—the components of the fulfillment package were essentially the same, although specific offers from travel partners could vary. The

---

[2] For existing Silver Wings members, the USA Collection benefit allowed them to purchase certificates that then gave them the ability to book USA Collection fares. See [51-2] at 20-21.

standard fulfillment package included a welcome letter, a "travel wallet" with the new member's membership card, the welcome gifts, and the Silver Wings Terms and Conditions. If a member received his or her card, it would have come in a package that included the Terms and Conditions. The Terms and Conditions were also posted on the Silver Wings website during 2000.

The Terms and Conditions contained in the standard fulfillment package at the time Plaintiff enrolled included the following provisions: "Silver Wings Plus and its partners reserve the right to substitute or withdraw any offers or to limit their availability at any time. Terms, policies, and conditions of Silver Wings Plus services are subject to change at any time. United Airlines reserves the right to terminate the Silver Wings Plus Program with 12 months' notice." [59] at 13. The Terms and Conditions also included the following refund provision: "The membership fee is refundable during the first 90 days of membership only, upon return of complete membership kit including membership card, United Airlines Travel Certificates and Partner Welcome Gift Certificates. Any Mileage Plus bonus miles resulting from Silver Wings Plus enrollment will be forfeited." *Id.*

Plaintiff admits receiving his Silver Wings' membership card by U.S. mail. Plaintiff also admits that he has no basis to dispute that after joining Silver Wings he received membership materials that were substantially similar to the standard RMP fulfillment package, including the Terms and Conditions. Nonetheless, Plaintiff also denies that he was provided the Terms and Conditions at the time he joined Silver Wings and denies that the Terms and Conditions formed part of the contractual relationship between him and United. [59] at 16.

Plaintiff did not seek a refund within the first 90 days of his Silver Wings membership and did not return the membership kit. Plaintiff received 5,000 MileagePlus miles as an

enrollment bonus and more than 12,000 additional MileagePlus bonus miles since 2005 due to his status as a Silver Wings member. Plaintiff admits that he "got some value out of the [Silver Wings] program in the beginning" of his membership and recollected that he was "successful" in booking zoned fares shortly after he joined Silver Wings in the early 2000's. [59] at 15.

From the time Plaintiff enrolled until September 2005, the Terms and Conditions always included all three of the following provisions:

> Silver Wings Plus and its partners reserve the right to substitute or withdraw any offers or to limit their availability at any time.
>
> Terms, policies, and conditions of Silver Wings Plus services are subject to change at any time. United Airlines reserves the right to terminate the Silver Wings Plus Program with 12 months' notice.
>
> The membership fee is refundable during the first 90 days of membership only, upon return of complete membership kit including membership card, United Airlines Travel Certificates and Partner Welcome Gift Certificates. Any Mileage Plus bonus miles resulting from Silver Wings Plus enrollment will be forfeited.

The USA Collection changed from a mileage-based structure to a zone-based structure sometime in 2001.

In September 2005, United revised the Terms and Conditions. The revised Terms and Conditions included the following statement concerning their applicability: "Effective Date— these Terms and Conditions shall be effective September 6, 2005 and shall apply to all memberships in the Silver Wings Plus Program issued on or after that date. The terms and conditions applicable to memberships issued prior to September 6, 2005 shall be those displayed on the Program web site when the respective member logs-in." [59] at 16-17.

Plaintiff disputes that the revised Terms and Conditions apply to him. Plaintiff testified at his deposition that his contract with United provided in part that "when you reached the age of 55, you would be offered these zoned airfares that United would have on their Silver Wings Program" and that he "would be able to use the zoned airfares for the rest of [his] life or

7

United's, whichever came first." [59] at 17. He further testified that United promised that zoned fares for "certain flights between certain zones, cities" would be "readily available" for the rest of his life, although he "assume[d]" the prices would rise over time. *Id.* at 18. Plaintiff understood "zoned fares" to mean "[t]hat you would get a special fare if you traveled within one zone or another airfare, if you traveled two zones, and I believe there was three zones across the country," and "[i]t would be it a different fare for one to three, whatever zones you traveled through or to." *Id.* When he was asked "when you say 'zones across the country,' are you referring to the country sort of being divided up," Plaintiff responded: "Into the three zones. I think I do have a picture in mind of a map, almost like time zones." *Id.* Plaintiff testified that he did not understand the "USA Collection" described in the 2000 RMP acquisition mailings to refer to what he described as zoned airfare. [51-7] at 14. When asked whether United promised him that "in September/October 2011 you would be able to fly roundtrip between Chicago and Phoenix for less than $133.90," Plaintiff responded that United "never made a price promise of anything," and never promised that zoned fares would be cheaper than other available fares. [59] at 27. Plaintiff also admitted that during the limited period of time that Harraman's testimony covered, there was no express promise that zoned airfares would be available for every flight, would be presented in a specific zoned grid, or would always be the cheapest fare.

Since 2007, United has represented that it continues to offer zoned fares to Silver Wings lifetime members; however, Plaintiff denies that United has actually continued to make such fares available. Between January 1, 2007 and January 30, 2016, there were 5,048 Silver Wings zoned fare bookings, with zoned fare bookings taking place every year. Defendant did not make any of these bookings.

8

Between the early 2000s and 2012 or 2013, Plaintiff "basically forgot about" the Silver Wings program and made no attempt to use it. [59] at 22. Between January 1, 2006 and 2012 or 2013, Plaintiff did not try to book any zoned airfares and did not take any actions to determine whether they were available. But at some point in 2013, Plaintiff tried to book zoned airfare and to determine if zoned airfare was still available. Plaintiff's interrogatory response about these attempts states:

> [S]ince January 1, 2006, [Plaintiff] made at least two or three attempts to book a flight using zoned airfares but was unable to. Plaintiff does not recall the exact dates, but does recall making such an attempt in 2013. In 2013 Plaintiff attempted to book a flight, he believes between Phoenix and Chicago, both online and through an '800' number. The first couple of agents he spoke with had no knowledge of the Silver Wings Program or 'zoned airfares.' Eventually, [Plaintiff] spoke with an agent who was familiar with the Silver Wings program. She told Mr. Neft the program had been discontinued and there were no zoned airfares available.
>
> At about the same time in 2013, [Plaintiff] tried to book on United's website through a Silver Wings Plus page, which displayed no available fares and a message saying he should call the '800' number he had previously called, for the availability of zoned airfares and to book the reservation. Plaintiff also went to the United ticket counter in the Phoenix airport, and the agent behind the counter told him he could call the '800' number for Silver Wings Plus to see [i]f zoned airfares were still being offered to Silver Wings Plus members.

[59-4] at 8-9.[3]

---

[3] Defendants argue that the statements allegedly made by its agents to Plaintiff are hearsay "to the extent [Plaintiff] seeks to introduce [them] for their truth—*i.e.*, that the Silver Wings program had been discontinued." [61] at 3. As discussed below, however, Plaintiff is opposing summary judgment on the basis that United breached its contract by failing to provide him with the zoned fares that United contends it continues to make available to Silver Wings members. Thus, the statements of United's agents are offered as evidence of the breach, not as evidence that Silver Wings has in fact been discontinued, and are not hearsay. See *La Playita Cicero, Inc. v. Town of Cicero, Illinois*, 175 F. Supp. 3d 953, 962 n.6 (N.D. Ill. 2016) (statement was not hearsay where "statement [was] not being offered for the truth of the matter asserted," and "[r]ather, Plaintiffs [we]re implying that the statement was untrue"). In addition, a statement made by United's agent about the availability of zoned fares would not be hearsay to the extent that "[t]he statement is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship while it existed." Fed. R. Evid. 801(d)(2).

Between January 1, 2007 and January 19, 2016, United issued 43 tickets to Plaintiff; none were purchased using zoned airfare. There were seven flights that Plaintiff booked between January 1, 2007 and 2012 where a zoned fare was available, the zoned fare was cheaper than the fare that Plaintiff paid, and the booking met zoned fare requirements. However, all of those flights were booked during the time when Plaintiff had "forgotten" about the program, and Plaintiff concedes that he did not try to book a zoned fare for any of those flights. From September 2010 to January 19, 2016, Plaintiff booked five flights on United. Three of those flights were purchased using mileage redemptions, such that zoned fares would not be available. Defendant maintains that zoned fares were available for the other two flights, but were more expensive than the non-zoned fares that Plaintiff paid; Plaintiff disputes that the fares were actually available to him.

In this lawsuit, Plaintiff, on behalf of himself and other lifetime members of Silver Wings, seeks to recover the one-time $225 fee that he paid to join Silver Wings, plus attorneys' fees and costs. His complaint contains one count, for breach of contract. The complaint alleges that he and other members of the class entered into a contractual relationship with Defendants when they signed up to become Silver Wings lifetime members. The complaint further alleges that while Plaintiff no longer has copies of the documents from United which describe Silver Wings and its benefits, these documents are (on information and belief) in Defendants' exclusive custody and control. According to Plaintiff, Defendants breached their obligations to lifetime members of Silver Wings and failed to honor their obligation of good faith and fair dealing, by: (1) failing to provide zones air fares, either over the phone or online; (2) representing in bad faith that Silver Wings members have access to zoned fares, when in fact that is not the case; and (3) failing to refund membership fees when United ceased offering zoned fares.

## II. Summary Judgment Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532-33 (7th Cir. 2013) (citation omitted).

To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250. Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex,* 477 U.S. at 322). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there

must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

III. Analysis

   A.   UCH

Plaintiff concedes that UCH is entitled to summary judgment based on the undisputed fact that it was not a party to any contract with Plaintiff. See [58] at 1 n.1   Therefore, UCH is entitled to summary judgment in its favor and against Plaintiff on all claims.

   B.   United

Under Illinois law, which the parties agree governs here, "[t]he elements of a claim for breach of contract are (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015) (citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (2004)).  In its motion for summary judgment, United argues that Plaintiff cannot establish the first, third, or fourth elements of breach of contract.

In particular, United argues (among other things) that it is entitled to summary judgment on Plaintiff's breach of contract claim because the Terms and Conditions, which are part of Plaintiff's contract, provide that "Silver Wings and its partners reserve the right to substitute or withdraw any offers, or to limit their availability, at any time"; that the "[t]erms, policies, and conditions of Silver Wings Plus services are subject to change at any time"; and that United "reserves the right to terminate the Silver Wings Plus Program with 12 months' notice." [50] at 13.  According to United, these provisions give it an absolute right to cease offering zoned

airfare, and therefore Plaintiff cannot demonstrate that United breached its contract with Plaintiff by allegedly failing to make available zoned airfares.

In response, Plaintiff essentially concedes that the Terms and Conditions are applicable to him[4] and makes no attempt to argue, as he did in his deposition, that his contract with United required United to make zoned fares available to Silver Wings members for their lifetime. See [58] at 4. Plaintiff argues, however, that since the undisputed evidence is that United *does* still offer zoned airfares to Silver Wings members, United breached its contract with him by denying him access to those zoned airfares when he attempted to buy them. See *id*. at 4, 6 (arguing that "Defendants have admitted that United has continued to offer zone fares to Silver Wings lifetime members to this day," which is "an undertaking by United which permits Plaintiff to assert his common law rights"; and that United's contractual right to modify the Silver Wings program is "irrelevant to Plaintiff's claim … based upon United's continued policy of offering zone fares to Silver Wings lifetime members").

---

[4] Although there is no existing record of the particular fulfillment packet that Plaintiff was sent when he joined Silver Wings, it is undisputed that Plaintiff received his Silver Wings membership card by U.S. mail and that, at the time Plaintiff joined, membership cards were sent to new members as part of a standard fulfillment packet that also included the Terms and Conditions. Plaintiff admitted in his deposition that he has no basis to dispute that he received the standard Silver Wings fulfillment packet after he joined and no basis to dispute that he received the Terms and Conditions. Plaintiff also admittedly understood that Silver Wings had membership policies that applied to him. And Plaintiff chose not to return the membership materials for a full refund within ninety days, as the Terms and Conditions informed him he could. Therefore, to the extent that Plaintiff contests the issue at all, the Court concludes that Plaintiff is bound by the Terms and Conditions. Cf. *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149-50 (7th Cir. 1997) (buyer of computer was bound by terms of contract that was shipped to buyer with the computer, where buyer did not return computer within 30 days as required by the contract); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1450-52 (7th Cir. 1996) (buyer of computer software was bound by terms of license enclosed with the software); *Spivey v. Adaptive Marketing, LLC*, 660 F. Supp. 2d 940, 943-49 (S.D. Ill. 2009) (plaintiff who purchased membership in discount club through telemarketer was bound by written membership agreement sent after the transaction).

The Court concludes that United is entitled to summary judgment on Plaintiff's breach of contract claim because Plaintiff has not presented any evidence that he was denied the right to purchase any zoned airfares that United made available to Silver Wings customers or that he suffered any injury. The only zoned fare that Plaintiff allegedly attempted to purchase was (he believes) for a flight between Phoenix and Chicago on an unspecified date in 2013. According to Plaintiff, United's agents either had no knowledge of the Silver Wings Program or zoned airfares or told him that the program had been discontinued and that no zoned fares were available. However, Plaintiff presents no evidence that United did, in fact, offer zoned airfare between Phoenix and Chicago for the date he wished to travel (a date that he did not specifically recall). Such evidence would be essential to his claim that he was not allowed to access a zoned fare that United purported to make available to Silver Wings customers, given his concession that United has a right to withdraw and limit any offers and therefore does not have a contractual obligation to offer zoned airfare generally or on any particular routes.

Plaintiff alleges more generally that United agents told him, wrongly, that the Silver Wings program had been discontinued and that no zoned airfares were available. But Plaintiff has no evidence that those alleged misrepresentations caused him any injury. That is, Plaintiff does not identify any benefits that he could and would have obtained if he had been correctly informed that the Silver Wings program was still operating and offering some zoned fares. Instead, Defendant has come forward with undisputed evidence that between 2013 (when Plaintiff remembered he was a Silver Wings member and attempted to access the program's benefits) and January 19, 2016, Plaintiff booked five flights on United. Three of those flights were purchased using mileage redemptions, such that zoned fares would not be available. Zoned fares were available for the other two flights (according to Defendant), but were more expensive

14

than the non-zoned fares that Plaintiff paid. In short, Plaintiff has come forward with no evidence that he was harmed in any way by the United agents' alleged misrepresentations, and United is entitled to summary judgment on the breach of contract claim. See *In re Illinois Bell Telephone Link-Up II*, 994 N.E.2d 553, 558 (Ill. App. 2013) ("Damages are an essential element of a breach of contract action and a claimant's failure to prove damages entitles the defendant to judgment as a matter of law."); *Walker v. Ridgeview Const. Co., Inc*., 736 N.E.2d 1184, 1187 (Ill. App. 2000) (where plaintiff failed to prove that it suffered damages, an essential element of a breach of contract action, defendant was entitled to a directed finding as a matter of law).

Finally, the Court agrees with United that Plaintiff's damages demand is preempted by the Airline Deregulation Act ("ADA"). The ADA prohibits states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier[.]" 49 U.S.C. § 41713(b)(1). This preemption clause "stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232-33 (1995). "This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id*. at 233.

In this case, the only remedy that Plaintiff requests is "restitution" in the form of a refund of the $225 members fee. This remedy is outside the terms of United's contract with Plaintiff. It is undisputed that under the Terms and Conditions, "[t]he membership fee is refundable during the first 90 days of membership only" and that Plaintiff did not seek a refund within 90 days. [59] at 12, 14. Plaintiff argues that the ADA and *Wolens* do not bar his demand for a refund

because United dishonored a term that it stipulated, namely its self-imposed undertaking to continue making zoned airfares available to lifetime Silver Wings members. Plaintiff argues that this "creates an obligation which is enforceable in a breach of contract action." [58] at 7. Be that as it may, there is no evidence that United ever undertook an obligation to provide a refund of the membership fee if its agents wrongly informed a Silver Wings member that zoned fares were unavailable (or for any other reason). Instead, that remedy is foreclosed by the plain language of the Terms and Conditions. Cf. *Schultz v. United Airlines, Inc.*, 797 F. Supp. 2d 1103, 1106 (W.D. Wash. 2011) ("Plaintiff's claims for a refund of the baggage fee as a result of the alleged breach of contract employ external state law to enlarge an existing agreement regarding baggage transport."). This does not mean that the refund provision of the Terms and Condition would bar any damages claim. For instance, Plaintiff might have calculated damages as the difference between a fare he ended up paying and the (presumably lower) zoned fare that United contends was available for the same route. But Plaintiff seeks only the return of his membership fee, and this remedy is contrary to the Terms and Conditions' limitation on refunds and thus is barred by the ADA.[5]

---

[5] Plaintiff's complaint also alleges that United violated its duty of good faith and fair dealing; however, Plaintiff clarifies in his response to summary judgment that his claims "are based upon United failure to comply with its own … express undertaking to offer zoned fares to lifetime Silver Wings members by denying such fares to [P]laintiff." [58] at 8. Therefore, according to Plaintiff, the "Court does not really have to address" United's argument that the ADA preempts any state-law claim that is based on an alleged breach of the implied covenant of good faith and fair dealing.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [49] is granted. Judgment will be entered in favor of Defendants and against Plaintiff.

Dated: March 5, 2018

                                                        Robert M. Dow, Jr.
                                                        United States District Judge